UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
────────────────────────────────────────

THE GOLUB CORPORATION,

                Plaintiff,

  -against-                                         1:18-CV-1125 (LEK/ATB)

KLT INDUSTRIES, INC.,

                Defendant.
────────────────────────────────────────

## MEMORANDUM-DECISION AND ORDER

**I.  INTRODUCTION**

Plaintiff The Golub Corporation filed this diversity action against defendant KLT Industries, Inc. alleging that Defendant failed to make payments to Plaintiff on goods delivered to Defendant in accordance with their contract. Dkt. No. 1 ("Complaint"). The Court granted Plaintiff's first motion for default judgment as to liability but denied it as to damages, interest, attorneys' fees, and disbursements. Dkt. Nos. 11 ("First Motion"); 12 ("August Order").

Presently before the Court is Plaintiff's second motion for default judgment. Dkt. No. 15 ("Second Motion"). For the reasons that follow, the Court grants the motion in part and denies it in part.

**II.  BACKGROUND**

Plaintiff, a Delaware Corporation with its principal place of business in New York, operates a grocery store chain under the name Price Chopper. Compl. ¶¶ 3, 5. Defendant, a Rhode Island Corporation with its principal place of business in Massachusetts, provides cardboard recycling services. Id. ¶¶ 4–5. In August 2013, Plaintiff entered into a contract with Defendant in which "Plaintiff would sell and Defendant would purchase certain amounts of old corrugated containers produced by or purchased by Plaintiff." Id. ¶¶ 7–8. Between September

2014 and September 2015, Plaintiff delivered, and Defendant accepted, several deliveries of corrugated containers. Id. ¶¶ 13–47. While Defendant paid nearly in full on the initial deliveries, Defendant paid only $13,915.04 on Plaintiff's January 9, 2015 invoice for $274,023.10, and failed to make any payment on subsequent invoices, the last of which was submitted in September 2015. Id. On January 31, 2016, Plaintiff provided Defendant a statement of account showing that invoices totaling $2,345,483.65 remained unpaid. Id. ¶ 20. "Defendant has not communicated with the Plaintiff that Defendant rejected any of the deliveries or revoked its acceptance of the goods so delivered." Id. ¶ 46.

Plaintiff filed its Complaint in this Court on September 18, 2018. Compl. Defendant did not respond, and on December 6, 2018, the Clerk of the Court entered default against Defendant. Dkt. No. 9 ("Entry of Default"). Plaintiff filed the First Motion for default judgment on January 4, 2019. First Mot. On August 27, 2019, the Court granted the First Motion as to liability but denied it as to damages, interest, attorneys' fees, and disbursements because Plaintiff had failed to submit documentation sufficient to prove the amount of damages to which it was entitled. Aug. Order. at 4–8. Subsequently, on November 4, 2019, Plaintiff filed its Second Motion for default judgment. Second Mot. Once again, Defendant has not responded. Docket.

### III.  LEGAL STANDARD

"Federal Rule of Civil Procedure 55 provides a two-step process that the Court must follow before it may enter a default judgment against a defendant." Elec. Creations Corp. v. Gigahertz, Inc., No. 12-CV-1423, 2013 WL 3229125, at *3 (N.D.N.Y. June 25, 2013) (quoting Robertson v. Doe, No. 05-CV-7046, 2008 WL 2519894, at *3 (S.D.N.Y. June 19, 2008)). "First, under Rule 55(a), when a party fails to plead or otherwise defend . . . the clerk must enter the

party's default." Id. Second, under Federal Rule of Civil Procedure 55(b)(2), "the party seeking default judgment is required to present its application for entry of judgment to the court." Id. "When a default is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability." Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc., 655 F. Supp. 2d 177, 188 (E.D.N.Y. 2009) (citing Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)). "However, a court cannot take allegations in a complaint regarding damages as true. After determining whether the plaintiff has established liability, a court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." UFCW Local One Pension Fund v. L.K.R. Enterprises, Inc., No. 19-CV-645, 2020 WL 830613, at *2 (N.D.N.Y. Feb. 20, 2020) (Kahn, J.) (citations omitted). "The burden is on the plaintiff to establish its entitlement to recovery." Bravado Int'l, 655 F. Supp. 2d at 189. "While the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Id. at 190.

Under Local Rule 55.2(b), the moving party must submit with its motion for default judgment: (1) a clerk's certificate of entry of default; (2) a proposed form of default judgment; (3) a copy of the pleading to which no response has been made; and (4) an affidavit. L.R. 55.2(b). The affidavit must set forth that: (1) the party against whom judgment is sought is not an infant, incompetent, or in military service; (2) the party against whom judgment is sought has defaulted in appearance in the action; (3) service was properly effected under Federal Rule of Civil Procedure 4; (4) the amount sought is justly due and owing, and no part of that amount has been paid; and (5) the disbursements sought to be taxed have been made in the action or will necessarily be made or incurred. L.R. 55.2(a).

## IV. DISCUSSION

Plaintiff seeks relief in the form of: (A) unpaid principal owed on the contract; (B) prejudgment interest; (C) attorneys' fees; and (D) disbursements of filing and process service fees. Dkt. Nos. 15-1 ("Saccocio Declaration") ¶ 7; 15-3 ("Horn Declaration") ¶ 12.

The contract between the parties provides that the party in breach is responsible for all losses, costs, and expenses, including reasonable attorneys' fees, incurred by the non-breaching party as a result of the other party's breach. Dkt. No. 15-9 ("Agreement") ¶ 19. Given the Court's prior determination that Defendant breached the Agreement, Aug. Order at 3–4, the Court now considers whether Plaintiff is entitled to damages in the amount of the unpaid principal, prejudgment interest, attorneys' fees, and disbursements.

### A. Unpaid Principal

Plaintiff seeks $2,345,483.65 in unpaid principal. Horn Decl. ¶ 12; Dkt. No. 15-8 ("Cillis Affidavit") ¶ 5. In support of its claim, Plaintiff has submitted invoices documenting the amounts owed by Defendant, as well as an affidavit from an employee with personal knowledge of the Agreement and related transactions. Dkt. Nos. 15-10 to -26 ("Contract Exhibits"); Cillis Aff. The Court finds that Plaintiff has sufficiently proven the amount owed by Defendant pursuant to the Agreement. See Imaging Fin. Servs., Inc. v. Digital Page, LLC, No. 11-CV-641, 2012 WL 913257, at *2 (N.D.N.Y. Mar. 16, 2012) (Kahn, J.) (finding that detailed documentation of damages and an affidavit from an employee with personal knowledge of the contracts in question constituted sufficient documentary evidence).

Accordingly, the Court awards Plaintiff $2,345,483.65 in unpaid principal.

**B. Prejudgment Interest**

Plaintiff seeks $611,400.10 in prejudgment interest plus $465.88 per diem[1] from November 1, 2019 through the date of entry of judgment.[2] Horn Decl. ¶ 9. As explained in the Horn Declaration, Plaintiff calculated this figure of $611,400.10 using a floating interest rate from January 31, 2016, the date it submitted a complete statement of account to Defendant, to entry of judgment. Id. ¶¶ 8–11. However, because Plaintiff's prejudgment interest calculation is flawed in three ways, the Court denies this request.

First, Plaintiff failed to calculate the interest in accordance with the dates provided by the Agreement and mandated by Delaware law. As explained in the August Order, Delaware law governs Plaintiff's claim for prejudgment interest. Aug. Order at 6. Under Delaware law, the general rule is that interest starts from the date payment is due. Moskowitz v. Mayor & Council of Wilmington, 391 A.2d 209, 210 (Del. 1978). And when the obligation to pay arises from a contract, the court should look to the contract to determine when payment is due. Citadel Holding Corp. v. Roven, 603 A.2d 818, 826 (Del. 1992) (citing Watkins v. Beatrice Companies,

---

[1] "The per diem interest is determined by multiplying the judgment amount[] by the annual interest rate[] and then dividing by the number of days in a year (365)." Bafundo & Assocs. v. Collins, No. CIV.A. 2008-03-363, 2009 WL 3364311, at *2 (Del. Com. Pl. Oct. 15, 2009).

[2] Plaintiff suggests that the Court, in the August Order, "was inclined to award prejudgment interest only through the date of the filing of Plaintiff's Motion for Default Judgment." But this slightly misreads the Court's opinion. In support of the First Motion, Plaintiff calculated the interest through January 7, 2019, the date of filing of the First Motion, plus per diem interest. Dkt. No. 11-4. The Court pointed out in the August Order that Plaintiff filed the First Motion on January 4, 2019, not January 7, but did not suggest that Plaintiff should eliminate the per diem interest or halt the calculation on January 4, 2019. Aug. Order. The Court clarifies here that prejudgment interest is awarded until entry of judgment. See Wilmington Country Club v. Cowee, 747 A.2d 1087, 1097 (Del. 2000) ("Interest on a judgment begins to accrue when the judgment is entered as final and determinative of a party's rights.").

Inc., 560 A.2d 1016, 1020 (Del. 1989)). Here, instead of using the date that payment for each shipment was due under the Agreement, Plaintiff calculated the interest from the date it submitted to Defendant a statement of account detailing the total amount due from all previous transactions. Such a calculation method does not accord with Delaware law.[3] See Lewis v. State Farm Mut. Auto. Ins. Co., No. CIV.A. 04C-09-238FSS, 2007 WL 1651960, at *3 (Del. Super. Ct. May 29, 2007) (rejecting the plaintiffs' request for prejudgment interest because it ignored the relevant provisions in the contract and, instead, calculated interest from the date of the arbitrator's order). And because, in at least some cases, the date Plaintiff used and the date payment was due appear to be months apart, the accuracy of Plaintiff's interest calculation is highly suspect. See, e.g., Dkt. No. 15-13 (invoice for which payment was due in January 2015, almost a year before Plaintiff sent Defendant the statement of account).

Second, Plaintiff has failed to provide the Court with the documentation it would need to verify a proper prejudgment interest calculation. Specifically, Plaintiff has failed to provide any documentation regarding the dates that it delivered shipments to Plaintiff, and instead has only submitted invoices documenting the dates it billed Plaintiff for those shipments. See Contract Exs. Since, as described above, interest begins to accrue on the date of pick-up or delivery, the Court finds that the evidence is insufficient to determine the amount of interest to which Plaintiff

---

[3] The Court notes that, under the Agreement, payment is due 45 days from the date Defendant picks up a shipment from Plaintiff's facility, but that Defendant did not actually pick up most of the shipments. Instead, Plaintiff delivered them to Defendant. However, since the Agreement appears to treat delivery by Plaintiff and pick-up by Defendant interchangeably, see Agreement ¶ 6 (shifting the risk of loss to Defendant when Defendant picks up from Plaintiff's facility or when Plaintiff delivers to Defendant), the Court interprets the Agreement to provide that payment is due 45 days from the date of delivery by Plaintiff as well. See GMG Capital Investments, LLC v. Athenian Venture Partners I, L.P., 36 A.3d 776, 779 (Del. 2012) ("When interpreting a contract, the court will give priority to the parties' intentions as reflected in the four corners of the agreement . . . [and] must construe the agreement as a whole, giving effect to all provisions therein.") (citations omitted).

is entitled. See All Pro Maids, Inc. v. Layton, No. CIV.A. 058-N, 2005 WL 82689, at *2 (Del. Ch. Jan. 11, 2005) (rejecting request for prejudgment interest where the plaintiff failed to submit sufficient evidence for the court to determine whether and to what extent interest was appropriate).

Third, Plaintiff calculated the interest using floating rates instead of fixed rates. See Horn Decl. ¶ 9. Under Delaware law, where, as here, parties do not set a contract rate, the legal rate of interest is 5% over the Federal Reserve discount rate as of the date that interest starts to accrue, and it remains fixed at that rate. Del. Code Ann. tit. 6, § 2301(a); see Rexnord Indus., LLC v. RHI Holdings, Inc., No. CIV.A. 07C-10-057, 2009 WL 377180, at *9 (Del. Super. Ct. Feb. 13, 2009) (awarding prejudgment interest calculated at a fixed rate in accordance with § 2301). Accordingly, Plaintiff needed to calculate the interest using fixed legal rates as provided by Delaware law.

For the reasons above, Plaintiff's request for prejudgment interest is denied.

### C. Reasonable Attorneys' Fees

Plaintiff seeks $12,606.60 in attorneys' fees. Saccocio Decl. ¶ 6; Horn Decl. ¶ 12. Plaintiff supports its request with billing records documenting the hours expended on each task by each attorney and attorney declarations detailing their hourly rates and experience. Dkt. Nos. 15-2, -4 to -7 ("Attorney Exhibits"); Saccocio Decl. ¶¶ 5–8; Horn Decl. ¶¶ 5–7. These records provide sufficient information from which the Court can determine the reasonableness of the requested fees. See New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147–48 (2d Cir. 1983) (ordering that any attorney applying for court-ordered compensation must document the application with contemporaneous time records that specify "for each attorney, the date, the hours expended, and the nature of the work done"). After careful review of

the records, the Court adjusts the requested fee downward in light of certain excessive hourly rates charged and excessive hours claimed.

As the Court noted in the August Order, under New York choice of law rules, attorneys' fees are procedural, meaning that New York law applies rather than Delaware law. See Aug. Order at 6 n.2 (citing Manheim Auto. Fin. Servs., Inc. v. Fleet Funding Corp., 09-CV-4357, 2010 WL 1692954, at *6 (E.D.N.Y. Mar. 22, 2010), report and recommendation adopted by No. 09-CV-4357, 2010 WL 1688565 (E.D.N.Y. Apr. 22, 2010)). To determine attorneys' fees, courts applying New York law calculate the "presumptively reasonable fee" by multiplying the attorney's reasonable hourly rate by the reasonable number of hours that could have been expended on the case. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 189–90 (2d Cir. 2008); Millea v. Metro-North R. Co., 658 F.3d 154, 166 (2d Cir. 2011). The burden is on the party seeking attorneys' fees to submit sufficient evidence to support the rates claimed and the hours worked. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The Court now turns to assessing the rates and hours sought by Plaintiff.

    1. *Reasonable Hourly Rate*

Plaintiff seeks the following hourly rates: $225 for Patrick J. Saccocio, $175 for Chelsea Swilling, and $375 for John G. Horn. These attorneys have submitted declarations detailing their experience in support of the rates charged. Saccocio Decl. ¶ 7; Horn Decl. ¶ 7. The Court finds that the hourly rates requested for Saccocio and Swilling are reasonable, but Horn's hourly rate is excessive and should be reduced to $350.

According to the "forum rule," courts should employ "the hourly rates . . . in the district in which the reviewing court sits in calculating the presumptively reasonable fee." Bergerson v. N.Y. State Office of Mental Health, 652 F.3d 277, 290 (2d Cir. 2011) (citations omitted).

"Recent cases in the Northern District have upheld hourly rates between $250 and $350 for partners; between $165 and $200 for associates; and between $80 and $90 for paralegals." Deferio v. City of Syracuse, No. 16-CV-361, 2018 WL 3069200, at *3 (N.D.N.Y. June 21, 2018) (Kahn, J.) (collecting cases).

As detailed in the Saccocio Declaration, Saccocio is a partner who has been practicing for 30 years. Saccocio Decl. ¶ 7. Chelsea Swilling was a sixth-year associate during the relevant period. Id. Given their level of experience and the benchmark rates in this district, Saccocio's requested hourly rate of $225 and Swilling's requested hourly rate of $175 is appropriate.

Horn, as detailed in his Declaration, is a partner who has been practicing for nearly 20 years, focusing on business and commercial litigation. Horn Decl. ¶ 7. Horn's requested hourly rate of $375 exceeds the ceiling of reasonable hourly rates charged by partners in this district. Given his experience, a reduced rate of $350 per hour is appropriate. CIT Bank, N.A. v. Fox, No. 18-CV-154, 2019 WL 6134154, at *3 (N.D.N.Y. Nov. 19, 2019) (finding $350 to be a reasonable hourly rate for attorneys over twenty years of experience).

While Plaintiff has not submitted any billing for paralegal hours, as discussed below, a certain percentage of attorney time billed in this case is better characterized as paralegal time. Given the benchmark rates in this district, $90 per hour is an appropriate hourly rate for paralegal work. Deferio, 2018 WL 3069200, at *3.

### 2. *Reasonable Number of Hours*

Plaintiff seeks compensation for the following attorney hours: 4.4 hours for Saccocio, 26.8 hours for Swilling, and 19.2 hours for Horn. Att'y Exs. Plaintiff has provided billing records detailing the hours expended on each task by each attorney. Id. The Court finds that the number of hours should be adjusted to reflect clerical, paralegal, and duplicative work.

A district court has discretion in determining the amount of a fee award. Hensley, 461 U.S. at 437; see also Adobe Sys. Inc. v. Marrero, No. 11-CV-290, 2011 WL 13228500, at *4 (D. Conn. Nov. 16, 2011) (in resolving a motion for default judgment, stating that "[t]he district court has discretion in determining the amount of a fee award") (internal quotation marks omitted). Courts have "recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application, and [have] therefore endorsed percentage cuts as a practical means of trimming fat from a fee application." Carey, 711 F.2d at 1146.

Plaintiff billed for certain clerical and paralegal tasks at the attorney rate and these hours should be adjusted accordingly. Clerical and secretarial services are part of overhead and are not generally charged to clients. Deferio, 2018 WL 3069200, at *6. For example, "organizing case files and preparing documents for mailing are not compensable." Dotson v. City of Syracuse, No. 04-CV-1388, 2011 WL 817499, at *26 (N.D.N.Y. Mar. 2, 2011), aff'd, 549 F. App'x 6 (2d Cir. 2013). However, paralegal tasks "such as the selection and redaction of trial exhibits and preparation of trial exhibits and witness binders are compensable." Dotson, 2011 WL 817499, at *26. Regardless of who performs such tasks, time spent on paralegal tasks should be billed at paralegal rates; where it is not, a percentage reduction in fees is warranted. Prince of Peace Enter., Inc. v. Top Quality Food Mkt., LLC, No. 07-CV-349, 2014 WL 793084, at *9 (S.D.N.Y. Feb. 28, 2014).

The Court finds that Plaintiff billed for time spent on clerical tasks, such as "prepar[ing] affidavit [for] mailing," "e-fil[ing] affidavit [for] mailing," and "scan[ning] and e-fil[ing] motion [with] exhibits." Dkt. No. 15-2. These hours expended on clerical tasks are not compensable and should be eliminated from the award of attorneys' fees. See e.g., Cocuzza v. Rockland Cty., New York, No. 17-CV-8217, 2019 WL 6498915, at *7 (S.D.N.Y. Nov. 7, 2019) (finding that

reviewing, scanning, and filing on ECF an affidavit of service was clerical work and, thus, non-compensable), report and recommendation adopted by No. 17-CV-8217, 2019 WL 6498092 (S.D.N.Y. Dec. 2, 2019). Based on a careful review of Plaintiff's attorneys' time entries, clerical work makes up approximately ten percent of Swilling's billable hours and is non-compensable.

The Court further identifies certain tasks Swilling performed as more suitable for a paralegal, including "prepar[ing] notice of a lawsuit and request to waive service of a summons," "prepar[ing] waiver of service of the summons," and "prepar[ing] cover letter." Dkt. No. 15-2. These tasks are more properly labeled as paralegal tasks and should be billed at the reasonable rate for paralegals. See e.g., Cocuzza, 2019 WL 6498915, at *6 (applying a paralegal rate to time spent on preparing summons and complaint for service). Based on a careful review of Plaintiff's attorneys' time entries, paralegal work makes up approximately twenty percent of Swilling's billable hours. The Court therefore reduces Swilling's billable hours by twenty percent, and will instead treat that time as paralegal hours billable at a rate of $90 per hour.

The Court also finds that the overall number of hours claimed by Plaintiff are excessive. The fee applicant must establish that the hours claimed were reasonably expended and any hours that were not reasonably expended must be excluded. Hensley, 461 U.S. at 434. If a court finds that some of the claimed hours are "excessive, redundant or otherwise unnecessary," it may reduce the number of reasonable hours accordingly." Id. In determining what constitutes a reasonable expenditure of hours, the Court need not "scrutinize each action taken or the time spent on it." Aston v. Sec'y of Health & Human Servs., 808 F.2d 9, 11 (2d Cir. 1986). Rather, the Court has discretion to simply apply a reasonable percentage reduction. See Carey, 711 F.2d at 1146.

11

Upon review of the billing records, the Court finds that Plaintiff has charged for duplicative work in preparation of the Second Motion. Some portion of the attorney time was spent on work that would have been unnecessary had Plaintiff provided sufficient documentation in support of the First Motion, such as time spent reviewing documents and notes, participating in certain client conference calls, and recalculating prejudgment interest. Dkt. Nos. 15-6 to -7. Moreover, the billing records reflect 4.2 hours spent preparing the Cillis Affidavit, which in large part reproduced the Complaint. Cf. Nuriddinov v. Masada III, Inc., No. 15-CV-5875, 2017 WL 9253401, at *12 (E.D.N.Y. July 24, 2017) (finding 2.2 hours spent on preparing the third motion for default judgment that mostly reproduced the second motion to be excessive), report and recommendation adopted as modified by No. 15-CV-5875, 2018 WL 1251335 (E.D.N.Y. Mar. 12, 2018). The Court finds these hours to be excessive and, therefore, after eliminating the hours spent on clerical work, reduces the revised total billable hours across the board by thirty percent. Trustees of the Local 7 Tile Indus. Welfare Fund v. EAQ Constr. Corp., No. 14-CV-4097, 2016 WL 4540306, at *15 (E.D.N.Y. Aug. 12, 2016) (on a second motion for default judgment, reducing the total billable hours by thirty percent for duplicative work done to remedy inadequate initial motion), report and recommendation adopted by No. 14-CV-4097, 2016 WL 4536866 (E.D.N.Y. Aug. 30, 2016).

3. *Court Calculation of Attorneys' Fees*

Based on the hourly rates and reductions in time determined above, the Court finds that Plaintiff is entitled to the following attorneys' fees: $697.50 for Saccocio's time (consisting of 3.1 hours at $225 per hour); $2,292.50 for Swilling's time (consisting of 13.1 hours at $175 per hour); $4,690 for Horn's time (consisting of 13.4 hours at $350 per hour); and $342 for paralegal

work previously miscategorized as attorney work (consisting of 3.8 hours at $90 per hour). Therefore, Plaintiff is entitled to a total of $8,022 in attorneys' fees.

### D. Disbursements

Lastly, Plaintiff seeks $525 in disbursements. Saccocio Decl. ¶ 6. Plaintiff has adequately documented the disbursements, which consist of the $400 filing fee and the $125 process service fee. Dkt. No. 15-2 at 7, 15. Consequently, the Court awards Plaintiff $525 in disbursements. Premium Sports, Inc. v. Nichols, No. 17-CV-741, 2018 WL 3574870, at *9 (N.D.N.Y. July 25, 2018) (awarding $400 filing fee and reducing the process service fee from $450 to $180).

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Second Motion (Dkt. No. 15) is **GRANTED in part**. Defendant shall pay Plaintiff unpaid principal in the amount of $2,345,483.65, attorneys' fees in the amount of $8,022, and disbursements in the amount of $525; and it is further

**ORDERED**, that Plaintiff's Second Motion is **DENIED without prejudice** as to its request for prejudgment interest; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the local rules.

**IT IS SO ORDERED.**

DATED:    June 16, 2020
          Albany, New York

Lawrence E. Kahn
Senior U.S. District Judge

13